1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   EVANSTON INSURANCE COMPANY, an        No. 2:20-cv-01672 WBS KJN
     Illinois Corporation
13
                  Plaintiff,
14                                         MEMORANDUM AND ORDER RE
          v.                               DEFENDANTS' MOTIONS TO
15                                         DISMISS
     BRIAN HARRISON, individually and
16   doing Business as KINGDOM OF
     HARRON PRODUCTIONS, and
17   CHRISTOPHER GELMS, an
     individual,
18
                  Defendants.
19

20

21                          ----oo0oo----

22          This case arises out of a dispute over whether

23   plaintiff Evanston Insurance Company has a duty to indemnify or

24   defend defendant Brian Harrison, individually and doing business

25   as "Kingdom of Harron Productions" ("Kingdom of Harron"), under a

26   commercial general liability insurance policy issued to Kingdom

27   of Harron by plaintiff.

28
                                   1

I.    Factual and Procedural Background

On March 2-3, 2019, Kingdom of Harron held the "Kingdom of Harron's Edge of Spring Celtic Fantasy Fair" (the "Fair") in Auburn, California.  (Pl.'s Compl. ¶ 10 ("Compl.") (Docket No. 1).)  Prior to holding the Fair, Kingdom of Harron purchased event insurance coverage ("the Evanston policy") from plaintiff to cover liability arising out of the Fair.  (Id.)

The Evanston policy covers Kingdom of Harron for any payments Kingdom of Harron becomes legally obligated to pay as damages due to "bodily injury" or "property damage" occurring at the Fair, and gives plaintiff a "duty and right" to defend any suit seeking those damages, with a policy limit of $1,000,0000 per occurrence ("Coverage A").  (Compl. ¶ 11-12.)  It also covers Kingdom of Harron for medical expenses arising out of "bodily injury" caused by accident at the Fair, with a policy limit of $5,000 per person ("Coverage C").  (Compl. ¶¶ 11, 16.)  The policy contains multiple exclusions, however.

Coverage A contains an exclusion for bodily injuries or property damage that occurs as a result of an audience member, patron, or customer of the Fair's participation in a contest or athletic event (the "Participation Exclusion").  (Compl. ¶ 15.) It also contains an exclusion for any injuries arising out of any "assault or battery" occurring at the Fair (the "Assault or Battery Exclusion").  (Compl. ¶ 17.)

Coverage C contains an exclusion for medical expenses for bodily injury to any person engaged in physical exercise, games, or athletic contests at the Fair (the "Athletic Activities Exclusion").  (Compl ¶ 16.)  Coverage C also contains an

2

1    exclusion for any medical expenses arising out of bodily injury

2    that would otherwise be excluded under Coverage A (the "Coverage

3    A Exclusion").

4            Defendant Christopher Gelms ("Gelms") attended the Fair

5    on March 2, 2019.  (Compl. ¶ 18.)  Gelms participated in a "tug

6    of war" game at the Fair where participants were made to stand on

7    wooden blocks, and he broke his leg when a boy pushed him off his

8    wooden block.  (Id.)  On March 20, 2019, Gelms filed a personal

9    injury complaint in Placer County Superior Court for damages

10   against Kingdom of Harron for the injuries he sustained at the

11   Fair ("the underlying action").[1]  (Compl. ¶¶ 6, 22.)  Kingdom of

12   Harron tendered a defense to plaintiff and requested that

13   plaintiff indemnify it against the claims in the underlying

14   action under the Evanston policy.  Plaintiff denied coverage,

15   contending that (1) damages arising from Gelms' injury were

16   excluded under the policy's Participation Exclusion because Gelms

17   was injured while participating in the "tug of war" game; (2)

18   damages arising from Gelms' injury were excluded under the

19   _____

20   [1]     According to the Complaint, before Gelms filed his
     lawsuit in state court, Gelms filed a "Claim" in which he alleged
21   that Kingdom of Harron was liable for his injuries.  (Compl. ¶
     18.)  Kingdom of Harron tendered the Gelms Claim to plaintiff
22   under the Evanston Policy on March 13, 2019.  (Compl. ¶ 19.)  The
     complaint does not specify what type of "claim" Gelms filed, but
23   the complaint attached to defendants' motion to dismiss indicates
     that it was a "Government Claim against Gold Country
24   Fairgrounds."  Plaintiff disclaimed coverage for the Claim on
     April 23, 2019, on the grounds that (1) damages arising from
25   Gelms' injury were excluded under the Evanston policy's
     participation exclusion, because Gelms was injured while
26   participating in the "tug of war" game; (2) Gelms' medical
     expenses were excluded under the Evanston policy's participation
27   exclusion; and (3) Gelms' medical expenses were excluded under
     the Evanston policy's "Coverage A" exclusion.  (Compl. ¶¶ 20-21.)

28

1  Evanston policy's Assault or Battery Exclusion because of
2  allegations in Gelms' complaint that he was pushed off the wood
3  block upon which he was standing during the tug of war game; (3)
4  Gelms' medical expenses were excluded under the Evanston policy's
5  Participation Exclusion; and (4) Gelms' medical expenses were
6  excluded under the Evanston policy's "Coverage A" exclusion.
7  (Compl. ¶¶ 20-21, 24.)

8       On August 20, 2020, plaintiff brought this action
9  seeking declaratory relief under 28 U.S.C. § 2201.  (See
10 generally Compl.)  Plaintiff's complaint alleges that this court
11 has subject matter jurisdiction based on 28 U.S.C. § 1332 because
12 there is complete diversity of jurisdiction between plaintiff and
13 each of the defendants and the amount in controversy exceeds
14 $75,000.  (See Compl. ¶ 8.)

15      Plaintiff's First and Second Claims for Relief seek a
16 declaration that plaintiff has no duty to defend Kingdom of
17 Harron in the underlying action based on the Evanston policy's
18 Participation Exclusion and the Evanston policy's Assault or
19 Battery Exclusion, respectively.  (See Compl. ¶¶ 25-32.)
20 Plaintiff's Third, Fourth, Fifth, and Sixth Claims for Relief
21 seek a declaration that plaintiff has no duty to indemnify
22 Kingdom of Harron against the claims in the underlying action
23 based on the Evanston policy's Participation Exclusion, Assault
24 or Battery Exclusion, Athletic Activities Exclusion, and Coverage
25 A Exclusion, respectively.  (See Compl. ¶¶ 33-48.)

26      Defendants have filed identical motions to dismiss
27 plaintiff's complaint on the ground that the court lacks subject
28 matter jurisdiction over plaintiff's claims under Federal Rule of

1   Civil Procedure 12(b)(1) because no actual case or controversy

2   exists between the parties.[2]  (See Def. Kingdom of Harron's Mot.

3   to Dismiss at 1 ("Harron Mot. to Dismiss") (Docket No. 7-1); Def.

4   Gelms' Mot. to Dismiss at 2 (Docket No. 6-1).)  Defendants also

5   argue that plaintiffs' claims for declaratory relief fail to

6   state a claim upon which relief can be granted under Rule

7   12(b)(6) because they are either "moot and improper" or "not ripe

8   for adjudication."  (See Harron Mot. to Dismiss at 5-10; Harron

9   Reply at 1-2.)

10  II.  Legal Standard

11       A.   Lack of Subject Matter Jurisdiction

12            Dismissal under Federal Rule of Civil Procedure

13  12(b)(1) for lack of subject matter jurisdiction is appropriate

14  if the complaint, considered in its entirety, fails to allege

15  facts that are sufficient to establish subject matter

16  jurisdiction.  In re Dynamic Random Access Memory (DRAM)

17  Antitrust Litig., 546 F.3d 981, 984-85 (9th Cir. 2008).  A

18  defendant can challenge subject matter jurisdiction in one of two

19  ways--through a facial attack or a factual attack.  A facial

20  attack "accepts the truth of the plaintiff's allegations but

21  asserts that they are 'insufficient on their face to invoke

22  federal jurisdiction.'"  Leite v. Crane Co., 749 F.3d 1117, 1121

23  (9th Cir. 2014).  A factual attack "contests the truth of the

24  plaintiff's factual allegations, usually by introducing evidence

---

25       [2]    Defendants also filed identical reply briefs in

26  response to plaintiff's opposition.  (See Def. Kingdom of
    Harron's Reply ("Harron Reply") (Docket No. 12); Def. Gelms'

27  Reply (Docket No. 11).)  Because defendants' motions and reply
    briefs are the same, the court will cite only to defendant

28  Kingdom of Harron's briefs when discussing defendants' arguments.

1   outside the pleadings." Id.  "The plaintiff bears the burden of

2   proving by a preponderance of the evidence that each of the

3   requirements for subject-matter jurisdiction has been met." Id.

4         B.   Failure to State a Claim

5         Federal Rule of Civil Procedure 12(b)(6) allows for

6   dismissal when the plaintiff's complaint fails to state a claim

7   upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The

8   inquiry before the court is whether, accepting the allegations in

9   the complaint as true and drawing all reasonable inferences in

10  the plaintiff's favor, the complaint has stated "a claim to

11  relief that is plausible on its face." Bell Atl. Corp. v.

12  Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is

13  not akin to a 'probability requirement,' but it asks for more

14  than a sheer possibility that a defendant has acted unlawfully."

15  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare

16  recitals of the elements of a cause of action, supported by mere

17  conclusory statements, do not suffice." Id.

18  III. Discussion

19        The Declaratory Judgment Act authorizes "any court of

20  the United States" to "declare the rights and other legal

21  relations of any interested party," so long as that party

22  presents "a case of actual controversy" within the court's

23  jurisdiction.  28 U.S.C. § 2201(a).  The Ninth Circuit has

24  established a two-part test, often referred to as the Kearns

25  test, to evaluate challenges to the court's subject matter

26  jurisdiction over a plaintiff's claims for declaratory relief.

27  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir.

28  2005).  First, the court must determine "whether there is an

actual case or controversy within its jurisdiction." Id. (citing Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994)). "Second, if the court finds that an actual case or controversy exists, the court must decide whether to exercise its jurisdiction by analyzing the factors set out in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942), and its progeny." Id. (citing Kearns, 15 F.3d at 143-44).

A.    Whether Plaintiff's Declaratory Judgment Act Claims
      Present an Actual Case or Controversy

The requirement that a case or controversy exist under the first Kearns prong is "identical to Article III's constitutional case or controversy requirement." Kearns, 15 F.3d at 143. "Article III requires that there be a 'substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Aydin Co. v. Union of India, 940 F.2d 527, 528 (9th Cir. 1991) (emphasis in original) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). "[T]he case must also fall under one of the foundations of federal jurisdiction." Kearns, 15 F.3d at 143 (quoting Aydin, 940 F.2d at 528).

Here, as in Kearns, plaintiff's claims fall under one of the foundations of federal jurisdiction because "jurisdiction is premised on diversity." See id. The only question, then, is whether plaintiff's claims for declaratory relief satisfy Article III by presenting a "substantial controversy of sufficient immediacy and reality." Aydin, 940 F.2d at 528.

1.    Plaintiff's Duty to Defend Claims

A suit becomes moot, and "[t]here is . . . no case or

7

1   controversy . . . 'when the issues presented are no longer "live"

2   or the parties lack a legally cognizable interest in the

3   outcome.'"  Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quoting

4   Already, LLC v. Nike, Inc., 568 U.S. 85, 89 (2013)).

5          Defendants argue that plaintiff's claims do not present

6   a live controversy for the court to adjudicate because plaintiff

7   already elected not to defend Kingdom of Harron in the underlying

8   action before filing suit.  (See Harron Mot. to Dismiss at 6.)

9   According to defendants, plaintiff's claims therefore seek an

10  advisory opinion indicating that plaintiff's prior refusal to

11  defend Kingdom of Harron was proper, rather than a declaration

12  that would aid plaintiff in shaping future conduct.  (See id.

13  (citing Britz Fertilizers, Inc. v. Bayer Corp., 665 F. Supp. 2d

14  1142, 1173 (E.D. Cal. 2009) (Wanger, J.)).)

15         In Aetna Cas. & Sur. Co. v. Merritt, 974 F.2d 1196,

16  1199-1200 (9th Cir. 1992), the plaintiff insurance company,

17  Aetna, refused a request by its insured to defend him in a

18  personal injury action in California state court.  Merritt, 974

19  F.2d at 1198.  Aetna filed a complaint in federal court seeking a

20  declaration that it owed no duty to defend or indemnify the

21  insured based on the terms of the insurance policy.  See id.  The

22  Ninth Circuit held that the district court had properly asserted

23  jurisdiction over Aetna's claims for declaratory relief.  See id.

24  at 1199 ("We know of no authority for the proposition that an

25  insurer is barred from invoking diversity jurisdiction to bring a

26  declaratory judgment action against an insured on an issue of

27  coverage.").

28         In Kearns, 15 F.3d at 143-45, the court similarly held

8

1  that a declaratory judgment action initiated by an insurer

2  regarding its duty to defend and indemnify its insured in an

3  underlying state court action presented a "case or controversy"

4  capable of adjudication by a federal district court.  See Kearns,

5  15 F.3d at 144.  Seeking to clarify prior decisions regarding

6  whether an actual case or controversy exists in the context of

7  insurance coverage disputes, the Ninth Circuit rejected as dictum

8  a statement from a prior case that "there may not be a case or

9  controversy" in a declaratory judgment action disputing a duty to

10  defend.  See id. (citing Cont'l Cas. Co. v. Robsac Indus., 947

11  F.2d 1367, 1371-72 (9th Cir. 1991)).  The court then explicitly

12  reaffirmed its holding in Merritt that a declaratory judgment

13  action regarding an insurer's duty to defend and indemnify

14  presents a "case or controversy" under Article III and the

15  Declaratory Judgment Act.  See id. (citing Md. Cas., 312 U.S. at

16  273).

17          Here, plaintiff has also brought an action for a

18  declaratory judgment regarding its duty to defend and indemnify

19  defendant Kingdom of Harron in the underlying state court action.

20  (See generally Compl.)  Like the plaintiffs in Kearns and

21  Merritt, plaintiff here "seeks a declaration regarding its

22  obligations in the pending state court liability suit against"

23  Kingdom of Harron.  See Kearns, 15. F.3d at 144.  Plaintiff's

24  claims do not involve wholly past conduct, because according to

25  the allegations of the Complaint and the representations of

26  counsel at the oral argument on this motion the underlying action

27  is still ongoing.  Counsel represent that a default has been

28  entered against the Kingdom of Harron in the underlying action

1   but that judgment has yet to be entered upon that default.

2          Based upon those representations, if this court

3   declares plaintiff has a duty to defend, it still presumably

4   fulfill that duty from this point forward by undertaking the

5   defense and moving to set aside the default.  See Merritt, 974

6   F.2d at 1199.  This court, of course, expresses no opinion on how

7   the state court might rule on such a motion.  Thus, under

8   controlling Ninth Circuit precedent, plaintiff's claims for

9   declaratory relief as to its duty to defend present a substantial

10  controversy that is sufficiently immediate and real so as to

11  satisfy Article III's case or controversy requirement.  See

12  Kearns, 15. F.3d at 144; Merritt, 974 F.2d at 1199; see also

13  Progressive Cas. Ins. Co. v. Dalton, No. 2:12-CV-00713 MCE, 2012

14  WL 6088313, at *5 (E.D. Cal. Dec. 6, 2012) ("[C]ourts have

15  'consistently held that a dispute between an insurer and its

16  insureds over the duties imposed by the insurance contract [to

17  defend and indemnify] satisfies Article III's case and

18  controversy requirement.'" (quoting Gov't Emp. Ins. Co. v. Dizol,

19  133 F.3d 1220, 1222 n.2 (9th Cir. 1998))).

20         Defendants' argument that this case is distinguishable

21  from Kearns and Merritt is without merit.  Defendants contend

22  that Merritt differed from this case because, at the time the

23  insurer in that case filed its complaint for declaratory relief

24  in federal court, "no parallel state court proceeding existed,

25  and once the state court action was filed it was stayed pending

26  resolution of the [federal case]."  (See Harron Reply at 4.)

27  Defendants argue that the plaintiff in Merritt was therefore

28  seeking a declaration as to its obligations in a future

1    proceeding, rather than one that was already underway and for

2    which it had already disclaimed coverage, as is the case here.

3    (See id.)  However, the parallel state court proceeding in

4    Merritt that defendants assert had not yet begun was a parallel

5    suit for declaratory relief filed by the insured in state court.

6    See Merritt, 974 F.2d at 1198.  As in this case, the underlying

7    state court action for damages against the insured in Merritt was

8    already pending at the time the insurer filed its federal

9    complaint.  See id.

10         Defendants argue that Kearns does not govern this case

11   because, there, the insurer agreed to defend the insured in the

12   underlying state court action subject to a full reservation of

13   rights before filing suit in federal court.  (See Harron Reply at

14   4.)  However, defendants do not show that this distinction

15   carries any legal significance.  Defendants do not cite to any

16   Ninth Circuit case law that indicates that an insurer must agree

17   to defend an insured in an underlying state court action for a

18   live case or controversy to arise.  Defendants also overlook the

19   fact that the insurer in Merritt had refused to defend its

20   insured in the underlying state court proceeding for damages,

21   just as plaintiff did here.  See Merritt, 974 F.2d at 1199.

22         Finally, defendants argue that plaintiff's claims for

23   declaratory relief as to its duty to defend are improper because

24   an action for declaratory relief must act prospectively "to

25   enable the parties to shape their conduct so as to avoid a

26   breach."  (See Harron Mot. to Dismiss at 5-8.)  Defendants

27   primarily rely on Britz Fertilizers, Inc. v. Bayer Corp., 665 F.

28   Supp. 2d 1142 (E.D. Cal. 2009) (Wanger, J.).  In Britz, the court

11

1   held that a claim for declaratory relief as to whether the

2   plaintiff, Bayer, was obligated to provide an adequate defense

3   under its contract with Britz was improper because it sought

4   "only to address 'past wrongs' in connection with the

5   [underlying] litigation."  See Britz, 665 F. Supp. at 1173.

6        However, Britz is distinguishable from this case for

7   two reasons.  First, the plaintiff in Britz was the defendant in

8   the underlying state court litigation, and was requesting a

9   declaration that another party, Bayer, owed it a defense and

10  indemnification in the underlying action.  See Britz, 665 F.

11  Supp. at 1173.  Second, the underlying action in Britz had

12  already concluded by the time the plaintiff filed its action for

13  declaratory relief.  Id.  Britz held that the plaintiff's claim

14  for declaratory relief was improper because the plaintiff already

15  had a "fully matured cause[] of action" for monetary relief when

16  it filed its federal complaint.  Id.  Plaintiff's declaratory

17  relief claim would therefore be a "superfluous second cause[s] of

18  action for the determination of identical issues" rather than a

19  tool to "enable the parties to shape their conduct as to avoid a

20  breach."  Id. (internal citations omitted).

21       Here, in contrast, plaintiff Evanston is not a party to

22  the underlying action, but rather the insurer from whom the

23  defendant in the underlying action seeks defense.  Plaintiff's

24  claims for declaratory relief are therefore not duplicative or

25  superfluous of any claims for monetary relief because it is

26  Kingdom of Harron, not plaintiff, who will potentially have a

27  claim for breach of contract based on plaintiffs' refusal to

28  defend it in the underlying action.  See id.  Because the

1    underlying action here is still ongoing, plaintiff's claims for

2    declarative relief will help it "shape its conduct" so as to

3    avoid breach: if the court finds that plaintiff does owe Kingdom

4    of Harron a duty to defend under the Evanston policy, plaintiff

5    could still defend Kingdom of Harron before the underlying action

6    is resolved.  See id.[3]

7    _____

8        [3]   Defendants also cite to a number of other cases from
     the Eastern District of California, most of which simply restate
9    the same general rule articulated in Britz that declaratory
     relief operates prospectively to declare future rights, rather
10   than to redress past wrongs.  (See Harron Mot. to Dismiss at 6-
     7.)  Most of these cases simply state the same general rule
11   articulated in Britz that declaratory relief operates
     prospectively to declare future rights, rather than to redress
12   past wrongs.  See, e.g., C & C Props., Inc. v. Shell Co., No.
     1:14-cv-01889 JAM JLT, 2015 WL 5604384, at *8-9 (E.D. Cal. Sep.
13   23, 2015) (seeking declaratory relief for trespass claim).  The
     only case cited by defendants that involves an insurance
14   company's duty to defend and indemnify, Public Service Mutual
     Insurance Co. v. Liberty Surplus Insurance Co., 51 F. Supp. 3d
15   937 (E.D. Cal. 2014) (England, J.), also holds that the
     plaintiff's claims for declaratory relief would be superfluous of
16   its other claims for damages that had already matured and is thus
     distinguishable for the same reason as Britz.  See Public
17   Service, 51 F. Supp. at 950.
         Defendants also point to a number of cases from other
18   states that have held that "declaratory relief cannot be used by
     an insurer to seek a court's advisory validation of its prior
19   denial of coverage."  (See Harron Mot. to Dismiss at 7-8.)  Not
     only do many of these cases involve situations in which the
20   underlying action had already concluded by the time the plaintiff
     filed its suit for declaratory relief, see, e.g., Mid-Century
21   Ins. Co. v. Estate of Morris ex. rel. Morris, 966 N.E. 2d 681
     (Ind. Ct. App. 2012); Morgan v. Guaranty Nat. Cos., 489 S.E.2d
22   803 (Ga. 1997), these cases appear to be inconsistent with
     binding Ninth Circuit precedent that has held that a district
23   court may assert jurisdiction over a claim seeking a declaration
     that the insurer did not err in denying a defense to the insured
24   in the underlying action.  See Merritt, 974 F.2d at 1199.  Out of
     circuit state court decisions also do not lend much insight as to
25   whether a federal court has subject matter jurisdiction over a
     claim before it.

26

27

28

13

1    Accordingly, because plaintiff's claims for declaratory

2  relief as to plaintiff's duty to defend Kingdom of present a

3  "case or controversy" under Kearns and Merritt.  See Kearns, 15.

4  F.3d at 144; Merritt, 974 F.2d at 1199, the court has subject

5  matter jurisdiction over plaintiff's First and Second Claims for

6  Relief and that plaintiff has successfully stated claims upon

7  which relief can be granted.  See Kearns, 15. F.3d at 144;

8  Twombly, 550 U.S. at 570.

9         2.   Plaintiff's Duty to Indemnify Claims

10   In order for plaintiff's claims to be ripe for

11  adjudication under Article III, they must present a "substantial

12  controversy . . . of sufficient immediacy and reality to warrant

13  the issuance of a declaratory judgment."  Aydin, 940 F.2d at 528

14  (quoting Md. Cas., 312 U.S. at 273.

15    As with plaintiff's duty to defend claims, Kearns and

16  Merritt are again instructive.  See Kearns, 15. F.3d at 144;

17  Merritt, 974 F.2d at 1199.  Both cases involved insurers seeking

18  declaratory relief as to their duty to defend and indemnify their

19  insured against underlying state claims, and, contrary to

20  defendants' assertions, there is no indication in either of those

21  cases that the court intended to cabin its holding that

22  jurisdiction was proper only to claims concerning the duty to

23  defend.  See Kearns, 15. F.3d at 144; Merritt, 974 F.2d at 1199.

24    In fact, Kearns explicitly stated that Merritt had

25  "held that in a declaratory judgment action brought to determine

26  a duty to defend or indemnify, the court may exercise

27  jurisdiction."  See Kearns, 15. F.3d at 144 (emphasis added).

28  The court then added that it was reaffirming Merritt's holding in

1  part because of the Supreme Court's decision in <u>Maryland Casualty</u>
2  <u>v. Pacific Coal & Oil</u>, in which the Court "held that an insurer's
3  declaratory judgment action regarding its duty to defend and
4  indemnify was sufficiently ripe, even when the underlying
5  liability action in state court had not yet proceeded to
6  judgment." <u>See</u> <u>id.</u> (citing <u>Md. Cas.</u>, 312 U.S. at 270).  Because
7  <u>Kearns</u> explicitly held that a claim for declaratory relief as to
8  an insurer's duty to indemnify its insured in underlying state
9  court proceedings presents "a case or controversy," plaintiff's
10  claims seeking a declaration as to its duty to indemnify Kingdom
11  of Harron are sufficiently ripe for adjudication.  <u>See</u> <u>id.</u>

12       Defendants cite to <u>Yellowstone Development, LLC v.</u>
13  <u>United Fire & Casualty Co.</u>, No. CV 11-12 BU CSO, 2011 WL 13077970
14  (D. Mont. Aug. 11, 2011) and <u>Western Interntional Syndication Co.</u>
15  <u>v. Gulf Insurance Co.</u>, No. CV 04-2349 RGK JWJ, 2004 WL 5573919
16  (C.D. Cal. Dec. 20, 2004), as examples of cases in which district
17  courts in the Ninth Circuit have held that a claim for a
18  declaration as to an insurer's duty to indemnify was not ripe for
19  adjudication because the claim had not "taken on a fixed and
20  final shape so that a court can see what legal issues it is
21  deciding." <u>See</u> <u>Yellowstone</u>, 2011 WL 13077970, at *3 (citing <u>N.</u>
22  <u>Cty. Commc'n Co. v. Cal. Catalog & Tech.</u>, 594 F.3d 1149, 1154
23  (9th Cir. 2010)).

24       Defendants do not articulate <u>why</u> plaintiff's duty to
25  indemnify claims in this case are too nebulous or unfixed for the
26  court to "see what legal issues it is deciding" prior to the
27  conclusion of the underlying action, beyond merely asserting that
28  they are claims seeking a declaration as to plaintiff's duty to

1   indemnify.  (See id.)  The court is not persuaded that

2   plaintiff's duty to indemnify claims are not ripe.  See Kearns,

3   15 F.3d at 144 (citing Md. Cas., 312 U.S. at 270).  The court is

4   instead persuaded by those cases in which district courts have

5   found that, under Kearns, claims for declaratory relief as to an

6   insurer's duty to indemnify an insured in an underlying action

7   that is still pending are sufficiently ripe for review.  See,

8   e.g., Dalton, 2012 WL 6088313, at *5-6 (citing Kearns, 15 F.3d at

9   144) ("That a defendant's liability may be contingent does not

10  necessarily defeat jurisdiction of a declaratory judgment action,

11  and the Act allows a plaintiff to bring a claim in certain cases

12  of unresolved contingencies.").[4]

13          The court therefore finds that it has subject matter

14  jurisdiction and that plaintiff's Third through Sixth Claims for

15  Relief adequately state claims upon which relief can be granted.

16  See id.; Twombly, 550 U.S. at 570.

17

18      B.   Whether the Brillhart Factors Counsel Exercising
             Jurisdiction

19

20          Even when a plaintiff's claims for declaratory relief

21  present the court with a "case or controversy" under Article III,

22  the court must decide whether to exercise its discretion to

23          [4]   The remainder of the cases upon which defendants rely
    either do not involve claims for declaratory relief as to an

24  insurer's duty to indemnify, or address whether declaratory
    relief for duty to indemnify claims is appropriate in California

25  state court.  (See Harron Reply at 6-7.)  None of these cases
    contradict the Ninth Circuit's holding in Kearns that claims for

26  declaratory relief as to an insurer's duty to indemnify are
    sufficiently ripe for review, even when the underlying action has

27  not yet concluded.  See Kearns, 15 F.3d at 144.

28

1    assert jurisdiction over those claims by analyzing the factors

2    set out in Brillhart.  Principal Life, 394 F.3d at 672 (citing

3    Kearns, 15 F.3d at 143).  The Brillhart factors, which are non-

4    exclusive, state that "(1) the district court should avoid

5    needless determination of state law issues; (2) it should

6    discourage litigants from filing declaratory actions as a means

7    of forum shopping; and (3) it should avoid duplicative

8    litigation."  Id. (quoting Gov't Emp. Ins. Co. v. Dizol, 133 F.3d

9    1220, 1225 (9th Cir. 1998)).

10           "Essentially, the district court 'must balance concerns

11   of judicial administration, comity, and fairness to the

12   litigants.'"  Id. (quoting Kearns, 15 F.3d at 144).  Other

13   considerations the court may take into account are whether the

14   declaratory action "is being sought merely for the purposes of

15   procedural fencing or to obtain a 'res judicata' advantage, and

16   whether the use of a declaratory action "will result in

17   entanglement between the federal and state court systems."

18   Dizol, 133 F.3d at 1225 n.5.

19           1.   Determination of State Law Issues

20           In considering first Brillhart factor, courts often

21   examine whether adjudicating the declaratory judgment action will

22   require the determination of novel questions of state law.

23   Dalton, 2012 WL 6088313, at *7 (citing Carolina Cas. Ins. Co. v.

24   Bolling, Walter & Gawthrop, No. Civ. S-04-2445 FCD PAN, 2005 WL

25   1367096, at *5 (E.D. Cal. May 31, 2005)); N.E. Ins. Co. v.

26   Masonmar, Inc., No. 1:13-cv-00364 AWI SAB, 2013 WL 2474682, at *3

27   (E.D. Cal. Jun. 7, 2013).

28           The present case will require the court to determine

1    whether the Evanston policy provides coverage for a suit against
2    Kingdom of Harron seeking damages for personal injuries to Gelms
3    that occurred during Gelms' participation in activities at the
4    Fair.  (See Compl. ¶¶ 22-24.)  "While the interpretation of an
5    insurance policy 'is governed by state law, the principles of
6    contract interpretation are well settled, and [a federal
7    district] court is an appropriate forum to adjudicate [the]
8    matter.'"  Dalton, 2012 WL 6088313, at *7 (alterations in
9    original) (quoting Mitsui Sumitomo Ins. Co. of Am. v. Delicato
10   Vineyards, No. CIV. S-06-2891 FCD GGH, 2007 WL 1378025, at *6
11   (E.D. Cal. May 10, 2007)).

12           California law regarding an insurer's duty to defend
13   and indemnify is well-defined.  See Burgett, Inc. v. Am. Zurich
14   Ins. Co., 830 F. Supp. 2d 953, 959 (E.D. Cal. 2011) (England, J.)
15   (summarizing California law regarding the duty to defend);
16   Certain Underwriters at Lloyd's of London v. Superior Court, 24
17   Cal. 4th 945, 958 (Cal. 2001) (summarizing California law
18   regarding the duty to indemnify).  Construing plaintiff's claims
19   is unlikely to involve novel state law issues.  See Sumitomo,
20   2007 WL 1378025, at *6 (holding that determination of whether
21   insurance policy covered spoilage of wine due to heat wave did
22   not require the court to determine novel questions of state law);
23   Dalton, 2012 WL 6088313, at *7 (holding that determination of
24   whether directors & officers insurance policy provided coverage
25   for corporate losses "should involve a relatively straightforward
26   analysis of the policy, without infringing on novel state law
27   issues").

28           Accordingly, the first Brillhart factor weighs in favor

                                    18

1  of the court retaining jurisdiction.  See Principal Life, 394
2  F.3d at 672.

3          2.   Discourage Forum Shopping

4          The second Brillhart factor counsels district courts to
5  disclaim jurisdiction if doing so would "discourage litigants
6  from filing declaratory actions as a means of forum shopping."
7  Principal Life, 394 F.3d at 672.  "This factor is usually
8  understood to favor discouraging an insurer from forum shopping,
9  i.e., filing a federal court declaratory action to see if it
10 might fare better in federal court at the same time the insurer
11 is engaged in a state court action."  Am. Cas. Co. v. Krieger,
12 181 F.3d 1113, 1119 (9th Cir. 1999).  This factor relates to "the
13 defensive" or "reactive" nature of a federal declaratory judgment
14 suit.  Robsac, 947 F.3d at 1372 (overruled on other grounds).  "A
15 declaratory judgment action by an insurance company against its
16 insured during the pendency of a non-removable state court action
17 presenting the same issues of state law is an archetype of what
18 we have termed 'reactive' litigation."  Id.

19         Here, it does not appear that plaintiff has engaged in
20 forum shopping by filing this action.  Plaintiff is not a party
21 to the underlying action for personal injuries against Kingdom of
22 Harron, and there does not appear to be any suit filed by
23 defendants in state court regarding the coverage issues contained
24 in plaintiff's complaint (Compl. ¶¶ 22-48).  Accordingly, nothing
25 indicates that plaintiff brought this action to see if it would
26 "fare better in federal court at the same time [it was] engaged
27 in a state court action."  See Krieger, 181 F.3d at 1119; Dalton,
28 2012 WL 6088313, at *8 ("All parties acknowledge that the FDIC

1   has yet to file a lawsuit in state court, demonstrating both that

2   Progressive is not a party in an underlying lawsuit and that the

3   coverage issues before the Court are not being litigated in any

4   other forum."); Masonmar, 2013 WL 2474682, at *3 (holding that

5   there was no suggestion plaintiff had engaged in forum shopping

6   where plaintiff was not a party to the underlying state court

7   action).

8        Defendants contend for the first time in their reply

9   brief that plaintiff's action for declaratory relief was

10  "reactive" because plaintiff was aware when it filed its action

11  that Kingdom of Harron was in default in the underlying action

12  and that Gelms would likely (1) seek a default judgment and (2)

13  file an action in state court against Kingdom of Harron and

14  plaintiff to enforce the default judgment.  (See Harron Reply at

15  12.)  Defendants assert that because a threat of future state

16  court litigation involving the same issues of coverage and

17  indemnification at issue in plaintiff's suit existed when

18  plaintiff filed its suit, plaintiff's suit should be considered

19  reactive and the court should refuse to assert jurisdiction.

20  (See id.)

21       Not only is defendants' argument waived because it was

22  raised for the first time in defendants' reply brief, see Bazuaye

23  v. INS, 79 F.3d 118, 120 (9th Cir. 1996), the court finds the

24  argument unpersuasive.  Courts consider declaratory judgment

25  actions to be "reactive" when they are brought during the

26  "pendency of a non-removable state court action presenting the

27  same issues of state law."  Robsac, 947 F.3d at 1372 (overruled

28  on other grounds) (emphasis added); Great S. Life Ins. Co. v.

1 | <u>Zarate</u>, No. C 96-4520 FMS, 1997 WL 136246, at *2 (N.D. Cal. Mar.
2 | 13, 1997) (holding that second <u>Brillhart</u> factor counseled against
3 | asserting jurisdiction because plaintiff's suit for declaratory
4 | relief was reactive, as it sought "declaratory relief in [federal
5 | court] regarding its obligations under state law for the same
6 | policy").  Here, plaintiff's claims brought in response to a
7 | state court action presenting different issues of state law, and
8 | they were brought five months after that suit was filed and
9 | almost three months after plaintiff disclaimed coverage for the
10 | underlying action.  (<u>See</u> Compl. ¶¶ 22-24.)

11 |     Because Kingdom of Harron had the opportunity to file a
12 | parallel action for declaratory relief in state court as to
13 | plaintiff's duty to defend or indemnify during this time period,
14 | there is no evidence that plaintiff engaged in a "race to the
15 | courthouse" to file its action for declaratory relief before
16 | defendants could.  <u>See Dalton</u>, 2012 WL 6088313, at *8 (finding
17 | that, because defendant "had sufficient time to file a lawsuit .
18 | . . there is accordingly no viable claim that [the insurer]
19 | participated in a race to the courthouse").

20 |         3.   <u>Avoid Duplicative Litigation</u>

21 |     The third <u>Brillhart</u> factor cautions district courts to
22 | avoid exercising jurisdiction where doing so would lead to
23 | duplicative litigation.  <u>Principal Life</u>, 394 F.3d at 672.  "If
24 | there are parallel state proceedings involving the same issues
25 | and parties pending at the time the federal declaratory action is
26 | filed, there is a presumption that the entire suit should be
27 | heard in state court."  <u>Id.</u> at 1225 (citing <u>Chamberlain v.</u>
28 | <u>Allstate Ins. Co.</u>, 931 F.2d 1361, 1366-67 (9th Cir. 1991)).

1   However, "cases . . . 'in which there are no parallel state court
2   proceedings' lie at the 'outer boundaries' of the district
3   court's discretion [to decline jurisdiction] under the
4   Declaratory Judgment Act." Md. Cas. Co. v. Knight, 96 F.3d 1284,
5   1289 (9th Cir. 1996) (citing Wilton v. Seven Falls Co., 515 U.S.
6   277, 289 (1995)).

7         As discussed above, the underlying state court action
8   involves different parties and different claims than those at
9   issue here.  While the underlying action may require the state
10   court to resolve some of the same factual issues as this case--
11   such as whether Gelms participated in the tug of war game at the
12   Fair and whether he was pushed off of his wooden block during
13   that game--the two courts will use these factual determinations
14   to resolve different legal issues.  See Masonmar, 2013 WL
15   2474682, at *4.  The state court will presumably need to
16   determine whether Kingdom of Harron can be held liable for Gelms'
17   injuries as a result of these facts.  (See Compl. ¶¶ 18-24.)
18   This court will have to determine whether the underlying action
19   falls under one of the Evanston policy's stated exceptions based
20   on the content of Gelms' allegations and claims in state court.
21   (See Compl. ¶¶ 25-48.)  Thus, at most, plaintiff's claims call
22   for duplicative adjudication of some of the facts at issue in the
23   underlying action, while determination of each case's legal
24   issues will remain separate.  See Masonmar, 2013 WL 2474682, at
25   *4.

26         Thus, there is no parallel state proceeding in this
27   action, and dismissing plaintiff's claims would require the court
28   to act at the "outer boundaries" of its discretion to decline

1   jurisdiction.  <u>See</u> <u>Knight</u>, 96 F.3d at 1289.  The court therefore

2   finds that the third <u>Brillhart</u> factor weighs against dismissing

3   plaintiff's claims.

4          Because the three <u>Brillhart</u> factors weigh in favor of

5   exercising jurisdiction, the court will assert jurisdiction over

6   plaintiff's claims for declaratory relief.  <u>See</u> <u>Dizol</u>, 133 F.3d

7   at 1223.

8          IT IS THEREFORE ORDERED that defendants' motions to

9   dismiss (Docket Nos. 6, 7) be, and the same hereby are, DENIED.

10

11  Dated:   November 18, 2020

12                                      WILLIAM B. SHUBB
                                        UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    23