UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, an Illinois Corporation<br><br>Plaintiff,<br><br>v.<br><br>BRIAN HARRISON, individually and doing Business as KINGDOM OF HARRON PRODUCTIONS, and CHRISTOPHER GELMS, an individual,<br><br>Defendants. | No. 2:20-cv-01672 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE: COUNTER-DEFENDANT EVANSTON INSURANCE COMPANY'S MOTION TO DISMISS AND MOTION TO STRIKE</u> |

----oo0oo----

This case arises out of a dispute over whether plaintiff Evanston Insurance Company ("Evanston") has a duty to indemnify or defend defendant Brian Harrison, individually and doing business as "Kingdom of Harron Productions" ("Harrison"), under a commercial general liability insurance policy issued to Harrison by Evanston. Evanston has moved to dismiss Harrison's

1

second counterclaim for breach of the implied covenant of good faith and fair dealing (see Evanston's Mot. to Dismiss (Docket No. 22)) and has moved to strike the portions of Harrison's counterclaim relating to punitive damages (see Evanston's Mot. to Strike (Docket No 21)).

I. Factual and Procedural Background

On March 2-3, 2019, Harrison held the "Kingdom of Harron's Edge of Spring Celtic Fantasy Fair" (the "Fair") in Auburn, California. (Pl.'s Compl. ¶ 10 ("Compl.") (Docket No. 1).) Prior to holding the Fair, Harrison purchased event insurance coverage ("the Policy") provided by Evanston via the website Eventhelper.com to cover it from any liability arising out of the Fair. (Id.)

The Policy covers Harrison for any payments Harrison becomes legally obligated to pay as damages due to "bodily injury" or "property damage" occurring at the Fair, and gives Evanston a "duty and right" to defend any suit seeking those damages, with a policy limit of $1,000,0000 per occurrence ("Coverage A"). (Compl. ¶ 11-12.) It also covers Harrison for medical expenses arising out of "bodily injury" caused by accident at the Fair, with a policy limit of $5,000 per person ("Coverage C"). (Compl. ¶¶ 11, 16.) The Policy contains multiple exclusions, however.

Coverage A contains an exclusion for bodily injuries or property damage that occurs as a result of an audience member, patron, or customer of the Fair's participation in a contest or athletic event (the "Participation Exclusion"). (Compl. ¶ 15.) It also contains an exclusion for any injuries arising out of any

2

1  "assault or battery" occurring at the Fair (the "Assault or
2  Battery Exclusion").  (Compl. ¶ 17.)  Coverage C contains an
3  exclusion for medical expenses for bodily injury to any person
4  engaged in physical exercise, games, or athletic contests at the
5  Fair (the "Athletic Activities Exclusion"). (Compl ¶ 16.)
6  Coverage C also contains an exclusion for any medical expenses
7  arising out of bodily injury that would otherwise be excluded
8  under Coverage A (the "Coverage A Exclusion").

9  Defendant Christopher Gelms ("Gelms") attended the Fair
10 on March 2, 2019.  (Compl. ¶ 18.)  Gelms participated in a "tug-
11 of-war" event at the Fair where participants were made to stand
12 on wooden blocks, and he broke his leg when a boy pushed him off
13 his wooden block. (Id.)  On March 20, 2019, Gelms filed a
14 personal injury complaint in Placer County Superior Court for
15 damages against Harrison for the injuries he sustained at the
16 Fair ("the underlying action").  (Compl. ¶¶ 6, 22.)  Harrison
17 tendered a defense to Evanston and requested that Evanston
18 indemnify it against the claims in the underlying action under
19 the Evanston policy.  Evanston denied coverage, contending that
20 Gelms' claims were not covered by the Evanston policy due to the
21 policy's various exclusions.  (Compl. ¶¶ 20-21, 24.)

22 On August 20, 2020, Evanston filed a complaint in this
23 court seeking declaratory relief against defendants Harrison and
24 Gelms under 28 U.S.C. § 2201.  (See generally Compl.)   Evanston
25 seeks a declaration that it has no duty to defend or indemnify
26 Harrison in the underlying action based on the Policy's relevant
27 exclusions.  (See id.)

28 On November 18, 2020, the court denied defendants'

3

motion to dismiss.  (See Docket No. 14.)  Defendant Harrison subsequently filed an answer denying liability, alleging multiple affirmative defenses as to each of Evanston's claims, and asserting two counterclaims against Evanston: one for breach of contract, and one for breach of the implied covenant of good faith and fair dealing.  (See Docket No. 16.)

II.  Discussion

    A.  Motion to Dismiss

"A motion to dismiss a counterclaim brought pursuant to Rule 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint."  Niantic, Inc. v. Gobal++, No. 19-cv-03425-JST, 2020 WL 1548465, at *2 (N.D. Cal. Jan. 30, 2020).  The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has stated "a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  "A court may, however, consider certain materials-- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-- without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908

4

(9th Cir. 2003).

California law provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." See, e.g., Jonathan Neil & Assocs., Inc. v. Jones, 33 Cal. 4th 917, 937 (Cal. 2004). The precise nature and extent of the duty imposed by the implied covenant of good faith depends on the purpose underlying a contract. Id. The implied covenant of good faith and fair dealing cannot impose substantive duties beyond those incorporated in the specific terms of a contract. Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 349 (Cal. 2000).

Under California law, an insurer's unreasonable refusal to defend an insured is considered a breach of the implied covenant of good faith and fair dealing and is actionable as a tort. See, e.g., Amato v. Mercury Cas. Co., 53 Cal. App. 4th 825, 831 (Cal. Ct. App. 1997). In order to plead a claim for tortious breach of the implied covenant of good faith and fair dealing, a complaint must allege facts which demonstrate a failure or refusal to discharge contractual responsibilities "prompted not by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990). Refusal to defend, without more, does not constitute a breach of the implied covenant. Tibbs v. Great Am. Ins. Co., 755 F.2d 1370, 1375 (9th Cir. 1985); accord Campbell v. Superior Court, 44 Cal. App. 4th 1308, 1319–1320 (Cal. Ct. App.

1   1996) (only unreasonable breach of duty to defend constitutes a
2   tort); Amato, 53 Cal. App. 4th at 831 (same).  "If the
3   allegations do not go beyond the statement of a mere contract
4   breach and, relying on the same alleged acts, simply seek the
5   same damages or other relief already claimed in a companion
6   contract cause of action, they may be disregarded as superfluous
7   as no additional claim is actually stated." Careau, 222 Cal.
8   App. 3d at 1395; Env't Furniture, Inc. v. Bina, No. CV 09-7978
9   PSG (JCx), 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010)
10  (citing Careau, 222 Cal. App. 3d at 1395).

11          Harrison's counterclaim alleges that Evanston "denied
12  coverage for Defendant Gelm's [sic] claim, prior to the
13  underlying lawsuit being filed, stating no coverage existed"
14  under each of the relevant exclusions in the Evanston Policy.
15  (See Harrison's Countercompl. ¶¶ 32, 34, 36-37 (Docket No. 16).)
16  Harrison further alleges that "by engaging in [this conduct],
17  [Evanston] breached its contract with [Harrison] . . . by
18  wrongfully, tortiously, and unreasonably denying coverage under
19  the Policy" both prior to and after the underlying lawsuit was
20  filed.  (See id. at ¶¶ 33, 35, 38.)  Finally, Harrison alleges
21  that, because of Evanston's "breach of duty to contract, breach
22  of its duty to defend, as well as its breach of its implied
23  covenant of good faith and fair dealing, [Harrison] was unable to
24  afford a defense for the underlying action . . . [and] default
25  has been entered and default judgment may soon be entered."  (See
26  id. at ¶ 40.)

27          These allegations are identical to the allegations that
28  form the basis of Harrison's counterclaim for breach of contract.

6

(Compare id. at ¶¶ 32-40 with id. at 10-29).  Besides conclusory statements that Evanston "wrongfully, tortiously, and unreasonably denied coverage under the Policy," Harrison's allegations do not plead any specific facts that evidence a "conscious and deliberate act" by Evanston to unfairly frustrate the agreed common purposes of its agreement with Harrison or disappoint the reasonable expectations of Harrison.  See Careau, 222 Cal. App. 3d at 1395.  Because Harrison's allegations amount to little more than a garden variety claim that Evanston failed to defend and indemnify Harrison under the Policy, "the breach of the implied covenant of good faith and fair dealing must give way to the breach of contract claim."  See Env't Furniture, 2010 WL 5060381, at *3 (dismissing claim for breach of the implied covenant of good faith and fair dealing because it was identical to breach of contract claim).

In its opposition, Harrison argues that the "information before this Court reasonably leads to the inference that Evanston acted in bad faith" because Evanston did not conduct any additional investigation between its first and second denial of Harrison's claim and defense, did not contact Harrison directly or "collect key extrinsic facts," and did not properly apply California law when it "narrowly interpreted and applied various policy exclusions in order to deny Harrison coverage and a defense."  (Harrison's Opp'n to Mot. to Dismiss at 4.)  But these assertions are not supported by specific allegations set forth in Harrison's countercomplaint, or even Harrison's answer or Evanston's original complaint.  Rather, Harrison offers only statements made in its attorney's declaration and two attached

7

1  denial-of-coverage letters sent to Harrison by Evanston, which
2  are not incorporated by reference in Harrison's countercomplaint
3  and of which Harrison has not asked the court to take judicial
4  notice.  See Ritchie, 342 F.3d at 908 ("Certain written
5  instruments attached to pleadings may be considered part of the
6  pleading . . . if the plaintiff refers extensively to the
7  document or the document forms the basis of the plaintiff's
8  claim.").

9       Harrison's arguments that Evanston adopted "narrow and
10 arbitrary" interpretations of each of the Policy's relevant
11 exclusions also suffer from a more fundamental defect, in that
12 they do not show that adopting such a narrow interpretation of an
13 insurance contract amounts to bad faith, rather a standard
14 disagreement over the contract's terms.  (See Harrison's Opp'n to
15 Mot. to Dismiss at 6-15.)  For example, Harrison argues that
16 Evanston's interpretation of the Policy's Participation Exclusion
17 was unduly narrow because Evanston failed to account for
18 California case law that has held similar exclusions inapplicable
19 when the activity at issue was not advertised specifically for
20 spectator entertainment and when the participants did not know
21 ahead of time the situation in which they were involving
22 themselves.  (See Harrison Opp'n to Mot. to Dismiss at 7-11
23 (citing Essex Ins. Co. v. FD Event Co. LLC, No. EDCV16607 JGB
24 (DTBx), 2017 WL 3309605, at *9 (C.D. Cal. July 25, 2017)).)  But
25 the cases upon which Harrison relies do not address the implied
26 covenant of good faith and fair dealing.  (See id.)  Rather,
27 Harrison cites only to cases in which courts have held, at the
28 summary judgment stage, that an insurer either did or did not

have a duty to defend under the terms of policy at issue.  See Essex, 2017 WL 3309605; see also, e.g., Essex Ins. Co. v. Insider Prods., LLC, No. 2:15-cv-09762-SVW-RAO, 2016 WL 7655691 (C.D. Cal. Jun. 29, 2016).  Harrison's argument merely shows that Evanston and Harrison adopted differing opinions as to the scope of the Policy's coverage.  Nothing in Harrison's counterclaim, or even the evidence submitted by Harrison in its moving papers, suggests that Evanston adopted its interpretations of the Policy in bad faith rather than as a result of a genuine dispute.  See Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co., 715 F. Supp. 2d 1079, 1088 (E.D. Cal. 2010) (Wanger, J.) (dismissing claim for breach of the implied covenant of good faith and fair dealing because complaint failed to allege specific facts evidencing bad faith, and instead "simply demonstrate[d] a difference of opinion between Defendant and Plaintiffs").

Because Harrison's counterclaim contains no mention of any failure on the part of Evanston to investigate, does not allege that Evanston failed to contact Harrison or "collect key extrinsic facts" before denying coverage (see Harrison's Countercompl. ¶¶ 30-45), and does not include sufficient detail to plausibly explain why Evanston's interpretations of the Policy were "unreasonable" or the result of anything other than a genuine difference of opinion as to the scope of the Policy's coverage, its conclusory allegations that Evanston wrongfully, tortiously, and unreasonably denied coverage fail to "allege facts establishing the bad faith breach of the implied covenant." See Env't Furniture, 2010 WL 5060381, at *3 (emphasis in original); Iqbal, 556 U.S. at 678.  Accordingly, the court will

1   dismiss Harrison's second counterclaim with leave to amend.

2       B.   Motion to Strike

3            Under Federal Rule of Civil Procedure 12(f), the Court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."  The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993); see also Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (citing same language).  Rule 12(f) motions are generally "disfavored" because they are "often used as delaying tactics, and because of the limited importance of pleadings in federal practice."  Schwarzer, et al., Federal Civil Procedure § 9:375 (citing Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).

            In light of the court's decision to dismiss Harrison's second counterclaim, Evanston argues that the court should strike allegations in Harrison's counterclaim for breach of contract stating that Harrison is entitled to punitive damages, as well as the demand for punitive damages in the countercomplaint's prayer for relief, because punitive damages are not available for breach of contract claims as a matter of law.  (See Evanston's Mot. to Strike at 4-5.)  Evanston is correct that, "[u]nder California law, punitive damages are not available for breaches of contract no matter how gross or willful."  Tibbs, 755 F.2d at 1375.  However, in Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970 (9th Cir. 2010), the Ninth Circuit made clear that "Rule 12(f)

does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." Id. at 974-75.

As noted by the Ninth Circuit, Rule 12(f) does not contemplate striking a claim for relief because it is precluded as a matter of law; nor does a claim for relief fall under one of the categories articulated in Rule 12(f). See id. (noting a claim for damages "is clearly not an insufficient defense"; "could not be redundant," . . . "is not immaterial, because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief"; "is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged"; and "is not scandalous").  Though some post-Whittlestone courts have continued to strike requests for punitive damages on the theory that such damages are precluded as a matter of law, see Johnson v. Napa Valley Wine Train, Inc., No. 15-cv-04515-TEH, 2016 WL 493229, at *13 (N.D. Cal. Feb. 9, 2016) (collecting cases), these courts have "generally d[one] so without addressing the effect of Whittlestone." Powell v. Wells Fargo Home Mortgage, No. 14-cv-04248-MEJ, 2017 WL 2720182, at *7 (N.D. Cal. Jun. 23, 2017). Rather, the weight of authority in this circuit has held that, in light of Whittlestone, motions to strike certain types of damages because they are precluded as a matter of law should be denied. See id. (collecting cases).  Accordingly, the court will not strike the allegations in Harrison's countercomplaint regarding punitive damages or the countercomplaint's prayer for punitive damages.

11

The court further declines to treat Evanston's Rule 12(f) motion to strike as a Rule 12(b)(6) motion to dismiss. It is true that, "where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion." Kelley v. Corrections Corp. of Am., 750 F. Supp. 1132, 1146 (E.D. Cal. 2010) (Ishii, J.); see also Rhodes v. Placer Cty., No. 2:09-cv-00489 MCE KJN PS, 2011 WL 1302240, at *20 (E.D. Cal. Mar. 31, 2011) (noting that, in light of Whittlestone, "courts sometimes construe such deficient motions to strike as motions to dismiss and analyze them accordingly").

However, because the court is already granting Harrison leave to amend its complaint in this Order, and given that Evanston did not request that the court, in the alternative, treat its motion as a motion to dismiss until its reply brief (which, consequently, has not allowed the parties to brief the relevant issues under the applicable Rule 12(b)(6) framework), the court declines to do so in this instance.

IT IS THEREFORE ORDERED that Evanston's motion to dismiss Harrison's Second Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Docket No. 22) be, and the same hereby is, GRANTED.  Harrison is given 20 days from the date of this order to file amended counterclaim if he can do so consistent with this Order.

IT IS FURTHER ORDERED that Evanston's motion to strike (Docket No. 21) be, and the same hereby is, DENIED.

///

Dated:  January 26, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE