UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, an Illinois Corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>BRIAN HARRISON, individually and doing Business as KINGDOM OF HARRON PRODUCTIONS, and CHRISTOPHER GELMS, an individual,<br><br>            Defendants. | No. 2:20-cv-01672 WBS KJN<br><br><u>ORDER RE: COUNTER-DEFENDANT EVANSTON INSURANCE COMPANY'S MOTION TO DISMISS</u> |

----oo0oo----

This case arises out of a dispute over whether plaintiff Evanston Insurance Company ("Evanston") has a duty to indemnify or defend defendant Brian Harrison, individually and doing business as "Kingdom of Harron Productions" ("Harrison"), under a commercial general liability insurance policy issued to Harrison by Evanston. Evanston has moved to dismiss Harrison's amended counterclaim for breach of the implied covenant of good

1

faith and fair dealing and his prayer for punitive damages in connection with both his breach of covenant and breach of contract counterclaims. (See Mot. (Docket No. 38-1).)

I. Factual and Procedural Background

Many of the relevant factual and procedural details are explained in the court's prior order, addressing Evanston's previous motion to dismiss. (See Docket No. 31.) In that order, the court dismissed Harrison's counterclaim for breach of covenant, with leave to amend, on the basis that his counterclaim did not plead facts plausibly demonstrating bad faith by Evanston. (See id. at 6-10.) In his amended counterclaim, Harrison has alleged additional facts that he argues are sufficient to survive Evanston's current motion. (See Opp'n at 5-6 (Docket No. 53).) The new, pertinent factual allegations are as follows.

The plaintiff in the underlying action, Christopher Gelms, sued Harrison alleging negligence and dangerous condition after Gelms was pushed and fell while playing a tug-of-war game at the fair, breaking his leg. (See Def.'s First Amended Counterclaim ("FACC") at ¶ 12 (Docket No. 33).) Based on representations made to Harrison by representatives from EventHelper.com, through which he purchased the operative Evanston insurance policy (the "policy"), Harrison believed Evanston would defend him from any suits alleging injury by anyone at the fair and indemnify him for any damages. (See id. at ¶¶ 10, 13.) He believed this because EventHelper.com did not notify him of the policy exclusions upon which Evanston would later rely in denying him coverage. (See id. at ¶ 15.) He

2

alleges the EventHelper.com representatives acted as Evanston's agents during this process.  (See id.)

Upon receiving Harrison's claim in the spring of 2019, Evanston interviewed Starr White -- a volunteer with Quality Pyrate Games, the group that organized and ran the tug-of-war event -- and based both its initial denial of his claim and its subsequent denial in June 2020 on this interview.[1]  (See id. at ¶¶ 18, 20.)  Harrison alleges that Evanston's investigation into the tug-of-war event and Gelms's injury was inadequate, primarily because Evanston did not interview Harrison or witnesses other than White or Webster, demonstrating that its refusal to defend and denial of coverage were in bad faith.  (See id. at ¶¶ 18-24, 44-47.)

II.  Discussion

"A motion to dismiss a counterclaim brought pursuant to Rule 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint."  Niantic, Inc. v. Gobal++, 19-cv-03425 JST, 2020 WL 1548465, at *2 (N.D. Cal. Jan. 30, 2020).  The inquiry before the court is whether, accepting the factual allegations in the complaint as true and drawing all reasonable

---

[1]  Evanston's initial denial letter indicates that it also relied on information provided by Gelms's fiancée, Kristy Webster; although this detail is not noted in the body of the amended counterclaim, the letter is attached and referenced, and the amended counterclaim states that the letter is "incorporated herein as though set forth in full."  (See FACC at ¶ 18, Ex. 2.)  Accordingly, the court will consider this detail in evaluating the instant motion.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider . . . documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment.").

inferences in the non-moving party's favor, the complaint has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts are not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Bell Atl. Corp., 550 U.S. at 555. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). "A court may, however, consider certain materials-- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-- without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

A.   Implied Covenant of Good Faith and Fair Dealing

California law provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Jonathan Neil & Assocs., Inc. v. Jones, 33 Cal. 4th 917, 937 (2004). The precise nature and extent of the duty imposed by the implied covenant depends on the

purpose underlying a contract.  Id.  The implied covenant cannot impose substantive duties beyond those incorporated in the specific terms of a contract.  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 349 (2000).

Under California law, an insurer's unreasonable refusal to defend an insured is considered a breach of the implied covenant of good faith and fair dealing and is actionable as a tort.  See Amato v. Mercury Cas. Co., 53 Cal. App. 4th 825, 831 (2d Dist. 1997).  To plead a claim for tortious breach of the implied covenant, a complaint must allege facts which demonstrate a failure or refusal to discharge contractual responsibilities "prompted not by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party."  Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (2d Dist. 1990).

Withholding policy benefits, including by refusing to defend the insured from suit, amounts to breach of the implied covenant only if done unreasonably, without proper cause, or in bad faith.  See Campbell v. Super. Ct., 44 Cal. App. 4th 1308, 1321 (2d Dist. 1996); Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1st Dist. 1990); Tibbs v. Great Am. Ins. Co., 755 F.2d 1370, 1375 (9th Cir. 1985) ("Refusal to defend, without more, does not constitute a breach of the implied covenant."). An insurer acts unreasonably if it "ignores evidence available to it which supports the claim."  Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 721 (2007) (citations omitted).

On the other hand, "an insurer denying . . . policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability . . . is not liable in bad faith even though it might be liable for breach of contract." Id. at 723 (quoting Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co., 90 Cal. App. 4th 335, 347 (2d Dist. 2001)). A genuine dispute exists "where the insurer's position is maintained in good faith and on reasonable grounds." Id. Further, "where there is no possibility of coverage, there is no duty to defend." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 19 (1995) (citation omitted).

Although in his amended counterclaim Harrison has put forth additional facts about Evanston's alleged omissions, they remain insufficient to plausibly allege bad faith. As explained in the court's prior order, (see Docket No. 31 at 2-3), the policy exclusions precluded coverage for injuries sustained at the fair (1) "while . . . participating in any physical exercises or games, sports, or athletic contests"; (2) "as a result of participating in a demonstration, show, competition, contest or athletic event"; or (3) due to an "assault or battery," which includes "claims . . . alleg[ing] negligence or other wrongdoing in the supervision . . . [or] monitoring of others or failure to protect or warn others" by any person. (See FACC, Exs. 2-3.)[2]

The basic allegations disclosed to Evanston by Webster and White were that Gelms fell and broke his leg because someone

---

[2] Although Evanston's first denial letter relied only on the first two of these exclusions, its second denial letter relied on all three. (See id.)

1  pushed him off a wooden block while he was playing tug-of-war at
2  the fair.  (See FACC, Exs. 2-3.)  These allegations, as presented
3  to Evanston, clearly suggested that all three exclusions applied
4  under their plain terms, and thus that Evanston had "reasonable
5  grounds" to believe Gelms's claim was not covered under the
6  policy.  Wilson, 42 Cal. 4th at 723; see also Raisin Bargaining
7  Ass'n v. Hartford Cas. Ins. Co., 715 F. Supp. 2d 1079, 1088-89
8  (E.D. Cal. 2010) (Wanger, J.) (mere difference of opinion between
9  insurer and insured insufficient to demonstrate bad faith).[3]

10          To allege that Evanston nonetheless acted unreasonably
11 or in bad faith by denying Harrison coverage without conducting
12 further interviews, Harrison was required to allege facts showing
13 that (1) Evanston knew or should have known that information
14 gained through further interviews could have yielded information
15 calling the exclusions' applicability into question, thereby
16 "support[ing] the claim," Wilson, 42 Cal. 4th at 721[4]; (2) the

---

[3]  "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." Waller, 11 Cal. 4th at 19.  However, "[f]acts extrinsic to the complaint" may also inform whether a duty to defend exists, depending on whether "they reveal a possibility that the claim may be covered by the policy." Id.  Accordingly, that Evanston issued its first denial letter before Gelms's underlying claim was filed does not make its disclaimer of a duty to defend unreasonable, given the other sources of information to which it had access.  See Aerojet-General Corp. v. Transport Indem. Co., 17 Cal. 4th 38, 58 (1997) (although duty to defend "arises as soon as tender is made, . . . . [i]t may be extinguished earlier, if it is shown that no claim can in fact be covered") (citations omitted.

[4]  Contrary to Evanston's contention, (see Mot. at 2, 12-13), Harrison is not required to demonstrate that further investigation would in fact have resulted in a change in Evanston's coverage position, see Wilson, 42 Cal. 4th at 721 ("To

explanation Evanston received as to how Gelms was injured was clearly untrue, such that relying on it without conducting further interviews was unreasonable; or (3) Evanston interpreted and applied the exclusions in an unreasonable manner.  See Careau, 222 Cal. App. 3d at 1395; Campbell, 44 Cal. App. 4th at 1321.

In his amended counterclaim, Harrison has done none of these.  Although in his opposition he asserts that further interviews "had the ability to be outcome determinative concerning coverage," (Opp'n at 6 (emphasis omitted)), the amended counterclaim contains no facts suggesting why Evanston should have believed this was so, given the exclusions' readily apparent applicability -- or even about what meaningful information these interviews might have uncovered -- nor does the opposition explain.  The amended counterclaim likewise fails to reference any reason Evanston should not have believed or relied upon the information Webster and White provided, which suggested Gelms's claim fell squarely within the exclusions' scope.  And although the amended counterclaim asserts that Evanston adopted arbitrary and unreasonable interpretations of the policy's exclusions, it does not state what those interpretations were, nor does Harrison explain why they were unreasonable.  (See FACC at ¶ 23; Opp'n.)[5]  Without any supporting facts, the court cannot

---

protect its insured's contractual interest in security and peace of mind, 'it is essential that an insurer fully inquire into possible bases that might support the insured's claim' before denying it.") (quoting Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 819 (1979)).

[5]   Prior decisions finding that the same or similar

credit these conclusory allegations.  See Sprewell, 266 F.3d at 988.

At oral argument, counsel for Harrison contended that the key allegations in Gelms's underlying complaint[6] were that Harrison and the event operators were negligent in allowing someone to enter the tug-of-war area and push Gelms.  Counsel contended that, accordingly, the cause of Gelms's injury was the failure to remove that person from the area, and thus the exclusions were not implicated.  Even assuming this theory were supported by Gelms's complaint, which is attached to the amended counterclaim, (see FACC, Ex. 1), it fails to explain how Gelms's injury would not also have been sustained "while . . . participating in . . . physical exercises or games, sports, or athletic contests," "as a result of participating in a demonstration, show, competition, contest or athletic event," or as a result of "assault or battery."

Moreover, coverage would appear to be precluded under this theory as well, as it frames Gelms's claim as one "alleg[ing] negligence or other wrongdoing in the supervision . . . [or] monitoring of others or failure to protect or warn others."  (Id., Ex. 3.)  And although Harrison's counsel

---

exclusions applied in similar circumstances provide further support for the reasonableness of Evanston's determinations.  See Essex Ins. Co. v. Insider Prod., LLC, 2:15-cv-09762 SVW RAO, 2016 WL 7655691, at *4 (C.D. Cal. June 29, 2016); United Specialty Ins. Co. v. Silva, 17-cv-07231 JSC, 2018 WL 6591663, at *5-8 (N.D. Cal. Dec. 14, 2018).

[6] Evanston issued its first denial letter before Gelms's complaint was filed but assessed the complaint prior to issuing its second denial letter.  (See FACC, Exs. 2-3; Mot. at 12.)

9

contended at oral argument that the tug-of-war event was simply "something done for show" and not truly a competition, the second exclusion specifically accounts for injuries sustained through participation in a "show" or "competition."

Finally, even assuming that EventHelper.com representatives acted as Evanston's agents, allegations of bad faith in dealings before the existence of a contract are insufficient to state a claim for breach of the implied covenant as a matter of California law. See McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2d Dist. 2008) (citing Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1031-35 (4th Dist. 1992)); Hess v. Transamerica Occidental Life Ins. Co., 190 Cal. App. 3d 941, 945 (1st Dist. 1987) (citing Gibson v. Gov't Emps. Ins. Co., 162 Cal. App. 3d 441, 448 (5th Dist. 1984)).

It is true that an insurer has an "obligation to thoroughly . . . investigate . . . the insured's claim," Wilson, 42 Cal. 4th at 723, and Harrison's allegations suggest that here this obligation may have gone unfulfilled. What the amended counterclaim fails to allege, however, is that, given the information before Evanston at the time, any alleged omissions in Evanston's investigation were unreasonable or evinced bad faith. Accordingly, it fails to state a claim for breach of the implied covenant of good faith and fair dealing. The court will therefore grant Evanston's motion to dismiss this count of Harrison's amended counterclaim.

  B. Request for Punitive Damages

Evanston also requests dismissal of Harrison's request

for punitive damages on his remaining breach of contract claim. (See Mot. at 13-14.)  Although the court previously denied Evanston's motion to dismiss the claim for punitive damages, it did so on the basis that Evanston had made the request under Federal Rule of Civil Procedure 12(f).  (See Docket No. 31.) Evanston has now done so pursuant to Rule 12(b)(6).  (See Mot.)

"Under California law, . . . a party cannot collect punitive damages for breach of contract awards." BladeRoom Grp. Ltd. v. Emerson Elec. Co., -- F.4th --, 2021 WL 6056194, at *12 (9th Cir. Dec. 21, 2021) (citing Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 516 (1994)); see Harris v. Atl. Richfield Co., 14 Cal. App. 4th 70, 77-80 (5th Dist. 1993) (in California, punitive damages available for breach of contract only where claim sounds in tort).  This rule applies "no matter how gross or willful" the breach. Tibbs v. Great Am. Ins. Co., 755 F.2d 1370, 1375 (9th Cir. 1985).

Federal district courts may dismiss portions of a pleading seeking damages in response to a 12(b)(6) motion. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010).  Dismissal of a request for punitive damages is proper where a California plaintiff's only remaining claim is for breach of contract. See La Jolla Spa MD, Inc. v. Avidas Pharms., LLC, 19-cv-1124 MMA (WVG), 2017 WL 4870374, at *7 (S.D. Cal. Oct. 27, 2017); R Power Biofuels, LLC v. Chemex LLC, 16-CV-00716 LHK, 2016 WL 6663002, at *21 (N.D. Cal. Nov. 11, 2016).  Accordingly, because the court will grant Evanston's motion to dismiss Harrison's breach of implied covenant counterclaim, it will also grant the motion to dismiss the amended counterclaim's request

for punitive damages.

        IT IS THEREFORE ORDERED that Evanston's motion to dismiss the amended counterclaim's second claim, for violation of the implied covenant of good faith and fair dealing, be, and the same hereby is, GRANTED.

        IT IS FURTHER ORDERED that Evanston's motion to dismiss the amended counterclaim's request for punitive damages be, and the same hereby is, GRANTED.[7]

Dated: January 13, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[7] Harrison has not specifically sought leave to amend. (See Opp'n.) In light of the allegations presented in the amended counterclaim; the attached documents, including Evanston's denial letters; and discussion with the parties at oral argument, the court concludes that further amendment would be futile. Accordingly, the court denies further leave to amend. See Doe v. Garland, 17 F.4th 941, 950 (9th Cir. 2021) ("A district court acts within its discretion to deny leave to amend when amendment would be futile.") (citation omitted); In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005) (dismissal without leave to amend proper if "it is clear . . . that the complaint [can]not be saved by any amendment") (citation omitted).